(December 27, 1917.)

## HENRY BRAYMAN, Respondent, v. RUSSELL & PUGH LUMBER COMPANY, a Corporation, Appellant.

[169 Pac. 932.]

MASTER AND SERVANT—SCOPE OF EMPLOYMENT—SAFE PLACE TO WORK —FELLOW-SERVANT — INSTRUCTIONS — PHYSICIANS AND SURGEONS— PRIVILEGED COMMUNICATIONS—EXCESSIVE DAMAGES.

1.  The scope of an employee's duties is to be defined by what he was employed to perform and by what, with the knowledge and approval of his employer, he actually did perform.

2.  The employer must use ordinary care and diligence in providing the employee with a reasonably safe place to work; he is not the insurer of the safety of such place.

3.  All the instructions given in a case must be read and considered together, and where, taken as a whole, they correctly state the law and are not inconsistent, but may be reasonably and fairly harmonized, it will be assumed that the jury gave due consideration to the whole charge and was not misled by an isolated portion thereof.

4.  Those are fellow-servants who are co-operating, at the time of an injury, in the particular business in hand, or whose usual duties are of a nature to bring them into habitual association or into such relations that they can exercise an influence upon each other promotive of proper caution.

5.  Under the statute forbidding a physician to be examined as to any information acquired in attending his patient, the acquisition of which is necessary in order to enable the former to prescribe or act for the latter, all statements made to a physician by his patient while the former is attending the latter in that capacity, for the purpose of determining his condition, are privileged, al-

Authorities discussing the question as to different forms of statement of the general rule with respect to master's duty as to place and appliances furnished to servant are collated in a note in 6 L. R. A., N. S., 602.

Generally as to who are fellow-servants, see note in 18 L. R. A. 792.

Authorities on the question as to whether privilege of communication to, or information acquired by, physician extend to physician not employed by patient will be found in notes in 16 L. R. A., N. S., 886; L. R. A. 1915F, 888.

though they have nothing to do with the patient's treatment, or the determination of his injuries.

6. It is immaterial in the application of such statute that the physician was not hired by the patient, but was hired by the patient's employer.

7. The patient does not waive the privilege provided by such statute, by testifying that in caring for his injuries he followed the physician's advice.

[As to confidential and privileged communication between physician and patient, see note in 33 Am. Rep. 435.]

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County.    Hon. R. N. Dunn, Judge.

Action for damages.    Judgment for plaintiff.    *Affirmed.*

C. H. Potts, for Appellant.

It is a settled rule of law in this state that the legal measure of the master's duty or liability is the exercise of ordinary care, having regard to the hazards of the service, to provide the servant with reasonably safe working places, machinery and appliances, and the exercise of ordinary care to maintain them in a reasonably safe condition of repair. (*Wiesner v. Bonners Ferry L. Co.*, 29 Ida. 526, 160 Pac. 647, L. R. A. 1917C, 328; *Armour & Co. v. Russell*, 144 Fed. 614, 75 C. C. A. 416, 6 L. R. A., N. S., 602.)

It is prejudicial error to instruct the jury that it is the duty of the master to furnish the servant a reasonably safe place to work, or that it is his duty to keep such place in a reasonably safe condition, as the full measure of his duty is to exercise reasonable or ordinary care to furnish a reasonably safe place to work. (*F. C. Austin Mfg. Co. v. Johnson*, 89 Fed. 677, 32 C. C. A. 309; *Chicago etc. R. Co. v. Merckes*, 36 Ill. App. 195; *Peoria etc. Ry. Co. v. Hardwick*, 48 Ill. App. 562; *Chicago etc. R. Co. v. Garner*, 78 Ill. App. 281; *Conway v. Illinois etc. R. Co.*, 50 Iowa, 465; *Louisville & N. R. Co. v. Mounce's Admr.*, 24 Ky. Law, 1378, 71 S. W. 518; *Anderson v. Michigan Cent. R. Co.*, 107 Mich. 591, 65 N. W. 585; *Hughley v. Wabasha*, 69 Minn. 245, 72 N. W. 78; *Chicago*

*etc. R. Co. v. Oyster,* 58 Neb. 1, 78 N. W. 359; *Lincoln Street Ry. Co. v. Cox,* 48 Neb. 807, 67 N. W. 740; *International etc. R. Co. v. Bell,* 75 Tex. 50, 12 S. W. 321; *Texas & P. Ry. Co. v. McCoy,* 90 Tex. 264, 38 S. W. 36; *Gulf C. & S. F. Ry. Co. v. Beall* (Tex. Civ.), 43 S. W. 605.)

Any instruction which tends to mislead the jury is reversible error. (*Southwestern Tel. & Tel. Co. v. Newman* (Tex. Civ.), 34 S. W. 661; *Warner v. Beebe,* 47 Mich. 435, 11 N. W. 258; *Funk v. St. Paul City Ry. Co.,* 61 Minn. 435, 52 Am. St. 608, 63 N. W. 1099, 29 L. R. A. 208; *Welter v. Leistikow,* 9 N. D. 283, 83 N. W. 9; *Dorr v. Camden,* 55 W. Va. 226, 46 S. E. 1014, 65 L. R. A. 348.)

Defendant having provided that the warning should be given, had fully complied with the obligations placed upon it by law. (*Wiesner v. Bonners Ferry Lbr. Co., supra.*)

"All of those engaged in the master's service in effecting a common purpose are to be deemed fellow-servants, notwithstanding the fact that the work is done in successive stages, different parts thereof being devolved upon different persons, and the labor performed by one set of employees being prior to that performed by another set." (*Citrone v. O'Rourke Engineering Const. Co.,* 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A., N. S., 340–342; 4 Wigmore on Evidence, sec. 2389; *Woods v. Lisbon,* 150 Iowa, 433, 130 N. W. 372; *Reed v. Rex Fuel Co.,* 160 Iowa, 510, 141 N. W. 1056; *Epstein v. Pennsylvania R. Co.,* 250 Mo. 1, Ann. Cas. 1915A, 423, 156 S. W. 699, 48 L. R. A., N. S., 394; *Holloway v. Kansas City,* 184 Mo. 19, 82 S. W. 89.)

Ezra R. Whitla, for Respondent.

To constitute workmen fellow-servants they must be engaged in the same common work under the same employment, for the reason that the rule of "fellow-servant" is based upon the idea that by the association of the men each with the other in a common line of work they will exercise a mutual caution for each other's welfare. (*Relyea v. Kansas City etc. R. Co.,* 112 Mo. 86, 20 S. W. 480, 18 L. R. A. 817; *Merritt v. Vic-*

*toria Lbr. Co.,* 111 La. 159, 35 So. 497; *Nocita v. Omaha & C. B. St. R. Co.,* 89 Neb. 209, 131 N. W. 214; *Edward Hines Lbr. Co. v. Ligas,* 172 Ill. 315, 64 Am. St. 38, 50 N. E. 225; *Christy v. Tremont Lumber Co.,* 129 La. 175, 55 So. 754; *John Spry Lbr. Co. v. Duggan,* 182 Ill. 218, 54 N. E. 1002; *Frost Mfg. Co. v. Smith,* 98 Ill. App. 308; *Louisville & N. R. Co. v. Edmund's Admr.,* 23 Ky. Law, 1049, 64 S. W. 727; *Koerner v. St. Louis Car Co.,* 209 Mo. 141, 17 L. R. A., N. S., 292, 107 S. W. 481; *Hendricks v. Lesure Lumber Co.,* 92 Minn. 318, 99 N. W. 1125, 100 N. W. 638; *Allard v. Northwestern Contract Co.,* 64 Wash. 14, 116 Pac. 457; *Illinois Steel Co. v. Zemkowski,* 220 Ill. 324, 77 N. E. 190, 4 L. R. A., N. S., 1161.)

"Fallers in logging camps are not fellow-servants of the members of a crew engaged in hauling logs from the woods, where they are left by the fallers." (*Cunningham v. Adna Mill Co.,* 71 Wash. 111, 127 Pac. 850.)

The position the servant is in when the accident occurred or the employment in which he is working must be the proximate cause of the injury, and must be outside of the scope of his employment to relieve the employer of liability. (*Terre Haute & I. R. Co. v. Mansberger,* 65 Fed. 196, 12 C. C. A. 574; *Phillips v. Chicago, M. & St. P. Ry. Co.,* 64 Wis. 475, 25 N. W. 544.)

It was the duty of the master to use reasonable care and diligence to furnish a safe place for the employee to perform his service in. (*City of Minneapolis v. Lundin,* 58 Fed. 525, 7 C. C. A. 344; *Wiesner v. Bonners Ferry Lumber Co.,* 29 Ida. 526, 160 Pac. 647, L. R. A. 1917C, 328; *Potlatch Lumber Co. v. Anderson,* 199 Fed. 742, 118 C. C. A. 180.)

It is the duty of the master to furnish the servant with a reasonably safe place in which to work, and in default he is guilty of negligence. (*Knauf v. Dover Lumber Co.,* 20 Ida. 773, 120 Pac. 157; *Crawford v. Bonners Ferry Lumber Co.,* 12 Ida. 678, 10 Ann. Cas. 1, 87 Pac. 998; *Craesafulli v. Winston Bros. Co.,* 18 Ida. 158, 108 Pac. 740; *Crawford v. Bonners Ferry Lumber Co.,* 12 Ida. 678, 10 Ann. Cas. 1, 87

Pac. 998; *Baltimore & O. R. Co. v. Baugh,* 149 U. S. 368, 13 Sup. Ct. 914, 37 L. ed. 772.)

The failure so to do is not assumed by the servant. (*Yost v. Atlas Portland Cement Co.,* 191 Mo. App. 422, 177 S. W. 690; *Patrum v. St. Louis etc. R. R. Co.,* 259 Mo. 109, 168 S. W. 622; *Norris v. Holt-Morgan Mills,* 154 N. C. 474, 70 S. E. 912, 2 N. C. C. A. 708; *Southern Turpentine Co. v. Douglass,* 61 Fla. 424, 54 So. 385.)

"When the master orders the servant to perform his work, the latter has a right to assume that the former, with his superior knowledge of the facts, would not expose him to unnecessary perils." (*Hardy v. Chicago, R. I. & P. R. Co.,* 149 Iowa, 41, 127 N. W. 1093; *McMahon v. Ida. Mining Co.,* 95 Wis. 308, 60 Am. St. 117, 70 N. W. 478.)

The master is liable where he directs the employee into some work or to go into some place of danger without giving him warning thereof. (*Oolitic Stone Co. v. Ridge,* 174 Ind. 558, 91 N. E. 944; *Industrial Lumber Co. v. Bivens,* 47 Tex. Civ. 396, 105 S. W. 831; *Missouri Pac. Ry. Co. v. Peregoy,* 36 Kan. 424, 14 Pac. 7.)

This court has held from the earliest time that it is the duty of the master to furnish the servant a reasonably safe place in which to work. (*Harvey v. Alturas Gold Mining Co.,* 3 Ida. 510, 31 Pac. 819; *Barrow v. B. R. Lewis Lumber Co.,* 14 Ida. 698, 95 Pac. 682; *Maw v. Coast Lumber Co.,* 19 Ida. 396, 114 Pac. 9; *Tucker v. Palmberg,* 28 Ida. 693, 155 Pac. 981; *Cnkovch v. Success Mining Co.,* 30 Ida. 623, 166 Pac. 567. See, also, *Bunker Hill etc. Com. Co. v. Jones,* 130 Fed. 813, 65 C. C. A. 363; *Chicago & A. R. Co. v. Scanlan,* 170 Ill. 106, 48 N. E. 826; *Knott v. Dubuque & S. C. Ry. Co.,* 84 Iowa, 462, 51 N. W. 57; *Nugent v. Cudahy Packing Co.,* 126 Iowa, 517, 102 N. W. 442; *Higgins v. Williams,* 114 Cal. 176, 45 Pac. 1041; *Grant v. Varney,* 21 Colo. 329, 40 Pac. 771; *Cudahy Packing Co. v. Sedlack,* 69 Kan. 472, 77 Pac. 102; *Gustafson v. Seattle Traction Co.,* 28 Wash. 227, 68 Pac. 721; *Mueller v. Northwestern Iron Co.,* 125 Wis. 326, 104 N. W. 67.)

Where the instructions all read together fairly state the law as applicable to the evidence, there is no error. (*Barrow v. B. R. Lewis Lumber Co.,* 14 Ida. 698, 95 Pac. 682; *Taylor v. Lytle,* 29 Ida. 546, 160 Pac. 942.)

. The physician's testimony was excluded by the provisions of sec. 5958, Rev. Codes. (*Jones v. City of Caldwell,* 20 Ida. 5, 116 Pac. 110, 48 L. R. A., N. S., 119, 23 Ida. 467, 130 Pac. 995; *Pennsylvania Co. v. Marion,* 123 Ind. 415, 18 Am. St. 330, 23 N. E. 973, 7 L. R. A. 687.)

Appellant's contention that the physician being employed by it prevented the communication from being privileged is not the law. (*Holtzen v. Missouri Pac. R. Co.,* 159 Mo. App. 370, 140 S. W. 767; *Louisville & S. I. Traction Co. v. Snead* (Ind. App.), 93 N. E. 177; *McRae v. Erickson,* 1 Cal. App. 326, 82 Pac. 209; *Colorado Fuel & Iron Co. v. Cummings,* 8 Colo. App. 541, 46 Pac. 875; *Arizona & N. M. R. Co. v. Clark,* 235 U. S. 669, 35 Sup. Ct. 210, 59 L. ed. 415, L. R. A. 1915C, 834.)

The verdict was not excessive. (*Maloney v. Winston Bros. Co.,* 18 Ida. 740, 111 Pac. 1080, 47 L. R. A., N. S., 634; *Konig v. Nevada-California-Oregon Ry.,* 36 Nev. 181, 135 Pac. 141; *Lynch v. Southern Pac. Co.,* 24 Cal. App. 108, 140 Pac. 298; *Kusnir v. Pressed Steel Car Co.,* 201 Fed. 146; *Baird v. New York Cent. & H. R. Co.,* 64 App. Div. 14, 71 N. Y. Supp. 734; *Ridenhour v. Kansas City Cable Ry. Co.,* 102 Mo. 270, 13 S. W. 889, 14 S. W. 760; *O'Keefe v. Eighth Ave. R. Co.,* 33 App. Div. 324, 53 N. Y. Supp. 940; *Smith v. Fordyce,* 190 Mo. 1, 88 S. W. 679; *Howard Oil Co. v. Davis,* 76 Tex. 630, 13 S. W. 665; *Ulrickson v. Soderberg,* 69 Wash. 347, 124 Pac. 909; *Krum v. Sullivan & Scharberg, T. & F. Co.,* 97 Neb. 491, 150 N. W. 640; 3 Cyc. 381; *Barter v. Stewart Mining Co.,* 24 Ida. 540, 135 Pac. 68.)

MORGAN, J.—Respondent was employed by appellant as a teamster. His duties consisted in hauling logs from the place where they were skidded to where they were placed in a chute, whereby they were conducted into Lake Coeur d'Alene preparatory to delivery at the sawmill. While as-

sisting the loaders in loading the logs on to a truck, respondent was struck by a falling tree and his arm broken. It appears that in the vicinity of the skidway where the logs were being loaded, sawyers were working, which fact was unknown to respondent; that they felled a tree which, in falling, struck a dead tree which, in turn, fell and struck respondent as above stated. Respondent instituted this action to recover damages alleged to have been sustained by him on account of such injury, and based his claim upon the negligence of appellant in directing him to load logs at a place rendered unsafe by reason of the close proximity of the sawyers; in failing to give proper signals of warning before felling the tree, and in permitting the tree to be felled in the direction of the skidway. The case was tried before a jury, which rendered a verdict in respondent's favor for $5,000, and judgment was entered accordingly. Appellant moved for a new trial, which motion was denied, and from the judgment and order denying the motion for a new trial this appeal has been taken.

Appellant contends that respondent was not acting within the scope of his employment, but was a volunteer, when injured. It is true respondent was employed as a teamster, or driver, and that immediately prior to the time he was injured he was on the top of his load helping the loaders, but there was evidence, contradicted, it is true, to show that it was the custom in appellant's camp, and in similar camps, for the teamster, or driver, to help the loaders load his truck in the manner in which respondent was engaged at the time of the accident.

The court instructed the jury that respondent could not recover if injured while performing work outside the scope of his employment, unless ordered so to do by the master, or unless such work was done with the master's consent or acquiescence, and that if it was the custom for drivers to assist in top-loading, then appellant could not set up as a defense the fact that respondent was so engaged when injured. The jury must have found that it was a custom, acquiesced in by appellant, for the driver to assist in top-loading, and the

evidence, though conflicting, is sufficient to sustain this finding.

The instruction above mentioned clearly states the law. The scope of the servant's duties is to be defined by what he was employed to perform and by what, with the knowledge and approval of his employer, he actually did perform. (*Robert Sherer & Co. v. Industrial Accident Com.* (Cal.), 166 Pac. 318; 26 Cyc. 1088; Dresser's Emp. Liability, sec. 103; *Rummell v. Dilworth*, 111 Pa. St. 343, 2 Atl. 355, 363; *Arkadelphia L. Co. v. Henderson*, 84 Ark. 382, 105 S. W. 882; *Hugo, Schmeltzer & Co. v. Paiz* (Tex. Civ.), 128 S. W. 912; *Belton Oil Co. v. Duncan*, 60 Tex. Civ. 257, 127 S. W. 884; *Jellico Coal Min. Co. v. Woods*, 154 Ky. 683, 159 S. W. 530; *Marshall v. United Rys. Co. of St. Louis* (Mo. App.), 184 S. W. 159; *Heilig v. Southern Ry. Co.*, 152 N. C. 469, 67 S. E. 1009; *Powhatan Lime Co. v. Whetzel's Admx.*, 118 Va. 161, 86 S. E. 898; *Big Five Tunnel O. R. & T. Co. v. Johnson*, 44 Colo. 236, 99 Pac. 63; *Union Pac. R. Co. v. Brereton*, 218 Fed. 593, 134 C. C. A. 321.)

The trial court instructed the jury: "The duty is upon the defendant to furnish a reasonably safe place for the plaintiff to work and to keep such place reasonably safe. . . . . " Appellant contends that this instruction is erroneous for the reason it intimates that appellant was absolutely the insurer of the safety of the place where respondent was working, whereas its duty was simply to use ordinary care in furnishing and maintaining a safe place. Respondent has cited many cases wherein such an instruction has been upheld, yet in none of them does it appear that it was assailed upon the same ground as in this case.

There can be no doubt that the true rule is, not that the master must furnish a reasonably safe place for the servant to work, but he must use ordinary care and diligence in furnishing a reasonably safe place. (*Wiesner v. Bonners Ferry Lumber Co.*, 29 Ida. 526, 160 Pac. 647, L. R. A. 1917C, 328; *Armour & Co. v. Russell*, 144 Fed. 614, 75 C. C. A. 416, 6 L. R. A., N. S., 602; *F. C. Austin Mfg. Co. v. Johnson*, 89 Fed. 677, 32 C. C. A. 309; *Lincoln St. Ry. Co. v. Cox*, 48

Neb. 807, 67 N. W. 740; *Chicago, B. & Q. R. Co. v. Oyster,* 58 Neb. 1, 78 N. W. 359; *Anderson v. Michigan Cent. R. Co.,* 107 Mich. 591, 65 N. W. 585; *Hughley v. City of Wabasha,* 69 Minn. 245, 72 N. W. 78; *Cudahy Pack. Co. v. Roy,* 71 Neb. 600, 99 N. W. 231; *International & G. N. R. Co. v. Bell,* 75 Tex. 50, 12 S. W. 321; *Chicago & E. I. R. Co. v. Garner,* 78 Ill. App. 281; *Peoria D. & E. Ry. Co. v. Hardwick,* 48 Ill. App. 562; *Chicago, B. & Q. R. Co. v. Merckes,* 36 Ill. App. 195; *Conway v. Illinois Cent. R. Co.,* 50 Iowa, 465.) However, the trial court, before giving the instruction complained of, instructed the jury that respondent had "a right to rely on the presumption that defendant used and was using reasonable care in furnishing a reasonably safe place to work," and in instruction numbered 18 charged the jury that "it was the duty of the defendant to use reasonable care and diligence to furnish a safe place for plaintiff to perform the work for which he was employed, but this duty did not require the defendant to furnish a place free from hazards or dangers, but only to exercise ordinary care and prudence to furnish such a place. The defendant was under no obligation to keep the plaintiff absolutely safe or free from danger or to insure the plaintiff against accidents." This instruction correctly states the law.

In many cases it has been held that where the instruction complained of was given, followed by an instruction like that numbered 18 in this case, there was prejudicial error as the two instructions were contradictory and it was not possible to say which one the jury followed. (*Armour & Co. v. Russell, supra; Chicago, B. & Q. R. Co. v. Oyster, supra; Hughley v. City of Wabasha, supra; Chicago & E. I. R. Co. v. Garner, supra; Peoria D. & E. Ry. Co. v. Hardwick, supra; Chicago, B. & Q. R. Co. v. Merckes, supra; Conway v. Illinois Cent. R. Co., supra; F. C. Austin Mfg. Co. v. Johnson, supra.*)

We are not in accord with that conclusion. While the instruction complained of, standing alone, was incomplete, and, for that reason, erroneous, it was not contradictory to or inconsistent with instruction numbered 18, and read therewith clearly states the law.

In 26 Cyc. 1097 to 1102, we find: "It is a positive duty of a master to furnish his servant with reasonably safe instrumentalities wherewith, and places wherein, to do his work, and in the performance of these obligations imposed by law, it is essential that regard should be had not only to the character of work to be performed, but also to the ordinary hazards of the employment; and the servant may assume that the master has performed such duty. . . . . The master is not an insurer of his servant's safety, but is only required to exercise such ordinary care and diligence as may be reasonable in view of the work to be performed and the dangers incident to the employment."

It cannot be said that the first portion of the above quotation contradicts what follows, but rather is qualified by it, so the instruction complained of is qualified by that numbered 18. All the instructions given in a case must be read and considered together, and where, taken as a whole, they correctly stated the law and are not inconsistent, but may be reasonably and fairly harmonized, it will be assumed that the jury gave due consideration to the whole charge and was not misled by an isolated portion thereof. (*State v. Curtis*, 30 Ida. 537, 165 Pac. 999, and cases therein cited; *Kelly v. Lemhi Irr. etc. Co.*, 30 Ida. 778, 168 Pac. 1076.)

It is appellant's contention that the sawyers were fellow-servants of respondent. If this be true, judgment should be reversed, for the reason that the jury may have decided respondent was injured through the negligence of the sawyers in not giving the proper warning or in negligently felling timber in the direction of the skidway, and not through the negligence of appellant in directing respondent to work in a dangerous place without warning him of the danger. There is conflict in the evidence as to whether or not the sawyers gave sufficient warning before cutting the tree, but there was sufficient evidence to sustain the finding of the jury that the sawyers were negligent in this respect, if its verdict was based upon that theory.

Whether or not respondent and the sawyers were fellow-servants was. because of the disputed facts in this case, a

question to be determined by the jury, and the court instructed it as follows: "In order to constitute the defendant a fellow-servant with the fellers of timber, they must have been employed by the master in some common line of employment by which employment they would co-operate in the particular business then in hand in the same line of employment, or whose usual duties would bring them into habitual association so that they might exercise mutual influence upon each other promotive of proper caution; but if you find in this case that the plaintiff and the fellers of timber did not associate together in the same common work, but were employed in different lines of work and were engaged in working separately from each other, the one not knowing what the other was doing or how the work was being carried on by him, and nothing of their work in common, and not associating together in performing the work, but acting entirely independent in a different part of the work, they would not be fellow-servants under the law, and the defendant could not escape liability for any injury caused by one to the other." This instruction correctly states the law with respect to what constitutes a fellow-servant. (*Relyea v. Kansas City, Ft. St. & G. R. Co.*, 112 Mo. 86, 20 S. W. 480, 18 L. R. A. 817; *Union Pacific R. Co. v. Erickson*, 41 Neb. 1, 59 N. W. 347, 29 L. R. A. 137; *Illinois Steel Co. v. Ziemkowski*, 220 Ill. 324, 77 N. E. 190, 4 L. R. A., N. S., 1161; *Chicago etc. R. Co. v. Kneirim*, 152 Ill. 458, 43 Am. St. 259, 39 N. E. 324; *Chicago City R. Co. v. Leach*, 208 Ill. 198, 100 Am. St. 216, 70 N. E. 222; *Richardson v. City of Spokane*, 67 Wash. 621, 122 Pac. 330; *Putnam v. Pacific Monthly Co.*, 68 Or. 36, 130 Pac. 986, 136 Pac. 835; *Irwin v. F. P. Gould & Son*, 99 Neb. 283, 156 N. W. 503; 18 R. C. L. 758.)

The courts are not in harmony as to what is necessary to establish the relation of fellow-servant, some holding that those are fellow-servants who serve the same master, work under the same control and are engaged in the same general business. Having in mind the very reason for the adoption, by the courts, of the fellow-servant doctrine, we hold that

the rule supported best by reason and authority is that stated in *Chicago City R. Co. v. Leach, supra,* as follows: "Those are fellow-servants who are co-operating, at the time of an injury, in the particular business in hand, or whose usual duties are of a nature to bring them into habitual association, or into such relation that they can exercise an influence upon each other promotive of proper caution." The instruction on the question of fellow-servant is in harmony with the law as above quoted.

Witnesses testified that it was not customary in appellant's camp, or in camps of like nature, for the sawyers and those hauling logs, or the loaders, to work in the same vicinity; that the sawyers felled the trees and cut them into sawlog lengths; after they had finished their work and left, swampers followed, whose duty it was to remove the brush and limbs, and make ready for the logs to be skidded; that the logs were then hauled to the skidways, where the loaders loaded them on the trucks. Assuming this testimony is true, and the jury had a right to proceed upon that theory, it appears that the usual duties of sawyers and teamsters are not of a nature to bring them into habitual association or into such relation that they can exercise an influence upon each other promotive of proper caution, and it further appears that the respondent and the sawyers were not, at the time of the injury, co-operating in the particular business in hand. Therefore, the jury was warranted in finding they were not fellow-servants, if it did so find.

Respondent was asked, on direct examination: "Q. You may state what the fact is as to whether or not you followed the doctor's advice strictly in relation to that arm and the treatment of it. A. Yes, I did." Appellant offered to prove that during the time Dr. Phinney was attending respondent he stated one morning that during the night before he dreamed he was falling out of bed and in trying to catch himself he hurt his arm and he thought he had thrown it out of place; that the doctor said it would be necessary to operate on the arm, but respondent refused to submit to an operation, and stated that if the doctor would take the

arm off so he could recover more from appellant, he would consent, and when the doctor insisted upon an operation he refused, saying that he intended to get a life pension out of appellant. The offer of proof was rejected upon the ground that the doctor was precluded from so testifying by reason of sec. 5958, Rev. Codes, which provides: . . . . 4. A physician or surgeon cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient; . . . . "

It is contended that the doctor who attended respondent was, in reality, hired by the appellant and that, because of this fact, the above provision does not apply. This contention is without merit. (40 Cyc. 2383.) Nor did respondent waive the privilege by testifying that he followed the physician's advice. (*Union Pac. R. Co. v. Thomas,* 152 Fed. 365, 81 C. C. A. 491.) It is clear to us that the testimony sought to be elicited is within the spirit and purpose of the prohibition of sec. 5958. (*Jones v. City of Caldwell,* 23 Ida. 467, 130 Pac. 995.) This statute is identical with the California provision. In *McRae v. Erickson,* 1 Cal. App. 326, 82 Pac. 209, a decision of the supreme court of California, in construing the statute of that state, we find, quoting from the syllabus: "Under the statute forbidding a physician to be examined as to any information acquired in attending his patient, the acquisition of which is necessary in order to enable him to prescribe or act for the patient, all statements made by a patient to his physician, while the latter is attending the former in that capacity, for the purpose of determining his condition, are privileged, although they have nothing to do with the patient's treatment, or the determination of his injuries, but relate to the way in which the injuries occurred."

Appellant contends that the verdict was excessive. There was testimony to show that respondent's arm was considerably shortened by reason of the accident; that it was partially paralyzed; that it is very doubtful if the defect can be

remedied by an operation; that he cannot perform the duties of teamster, and that therefore his earning capacity is greatly decreased. Under the circumstances we cannot say the verdict·was excessive.

The judgment and order appealed from are affirmed. Costs awarded to respondent.

Budge, C. J., and Rice, J., concur.